# United States Court of Appeals
## For the First Circuit

No. 17-1620

REV. FR. EMMANUEL LEMELSON; LEMELSON CAPITAL MANAGEMENT, LLC,

Plaintiffs, Appellants,

v.

BLOOMBERG L.P.; MATTHEW ROBINSON, as an individual and as an
agent of Bloomberg L.P.; JESSE WESTBROOK, as an individual and
as an agent of Bloomberg L.P.,

Defendants, Appellees.

———————————

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Timothy S. Hillman, U.S. District Judge]

———————————

Before

Torruella, Lynch, and Kayatta,
Circuit Judges.

———————————

Thomas R. Mason and Law Offices of Thomas Mason on brief for
appellants.
Robert A. Bertsche, Prince Lobel Tye LLP, Jeffrey B. Korn,
Jonathan D. Waisnor, and Willkie, Farr & Gallagher LLP, on brief
for appellees.

———————————

August 30, 2018

———————————

**KAYATTA**, **Circuit Judge**.  In both an online article and a subsequent TV interview, Bloomberg News reported that the Securities and Exchange Commission had opened an investigation to determine whether Emmanuel Lemelson, a priest and hedge fund manager, had intentionally published false material about public companies in whose stock he held a short position.  Lemelson filed suit against Bloomberg and the article's authors, claiming that the report renders Bloomberg liable for several common-law torts, including defamation.  The district court disposed of Lemelson's suit on defendants' motion to dismiss.  It concluded that Lemelson's activities made him at least a limited-purpose public figure -- if not a full-fledged public figure -- thus requiring Lemelson to allege facts making it plausible that Bloomberg acted with actual malice in reporting about Lemelson.  After concluding that Lemelson had failed to allege such facts, the district court dismissed his suit.  Lemelson now appeals.  For the following reasons, we affirm.

## I.

Because this suit comes to us on appeal from the district court's dismissal for failure to state a claim, we draw the facts from the complaint.  See González v. Vélez, 864 F.3d 45, 48 (1st Cir. 2017).  In this posture, we also consider the "implications from documents attached to or fairly incorporated into the complaint," as well as "facts susceptible to judicial notice" and

"concessions in plaintiff's response to the motion to dismiss." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55-56 (1st Cir. 2012) (internal quotation marks omitted).

According to his complaint, Emmanuel Lemelson is a "world-renowned priest [and] religious leader" in the Greek Orthodox Church. In his career outside of the church, Lemelson manages a hedge fund. He has become a "financial expert, philanthropist, humanitarian, and entrepreneur." Lemelson serves as the Chief Investment Officer of Lemelson Capital, LLC -- a firm that manages investment funds -- which, in turn, launched and manages a fund called Amvona. Lemelson also authors a blog that discusses, among other things, religion and finance. In his capacity as a commentator, he "has been interviewed by many international media outlets."

On March 17, 2016, Matthew Robinson, a reporter for Bloomberg News, called Lemelson for an interview. Robinson related to Lemelson the outline of a story he was writing: The SEC was looking into whether Lemelson had bet against publicly traded companies then published false statements in the hope of driving down the stock price. Robinson sought Lemelson's comment. Lemelson denied that he or his firm was the subject of an SEC investigation, but did report knowing of an SEC investigation into Ligand Pharmaceuticals, a publicly traded company about which Lemelson had publicly written. As recited in the complaint,

Robinson responded to Lemelson's denial by stating, "[W]ell, I'm going to write that you are being investigated anyway."

Later that day, Robinson followed up with an email. He laid out in more detail the elements of the story he planned to write and the specific allegations against Lemelson, and again asked for comment. The next morning, Robinson left a voicemail to the same effect and also informed Lemelson that Bloomberg planned to go to print imminently. Shortly thereafter, Robinson sent another email, reiterating his request that Lemelson "please get back to [him] as soon as possible." Beyond the first phone call, Lemelson does not appear to have responded to any of Robinson's communications.

On March 18, 2016, Bloomberg published the article. Titled "Hedge Fund Priest's Trades Probed by Wall Street Cop," it reported that the SEC was investigating Lemelson for stock manipulation. According to the article, the SEC was examining information Lemelson published about a variety of companies, including Ligand Pharmaceuticals, World Wrestling Entertainment, and Sketchers. The SEC sought to determine whether he had run afoul of securities laws by knowingly publishing false information about companies his firm had shorted. As we have previously explained, "'[s]hort selling' is a transaction in which an investor borrows shares of stock, sells them, and later buys an equivalent amount of shares to return the borrowed shares." Howard v.

- 4 -

Antilla, 294 F.3d 244, 246 (1st Cir. 2002).  Thus, the "potential for profit in short selling lies in the possibility that the stock price will decline between the time the short seller sells the borrowed stock and the time he must purchase replacement shares to repay the borrowed stock."  Id.  In one instance, the article reported, shares of Ligand Pharmaceuticals dropped seven percent after Lemelson posted on his blog that demand for one of Ligand's drugs was rapidly declining and that the company faced the imminent risk of declaring bankruptcy.  Lemelson does not dispute that his firm held a short position in Ligand.

The article did not name a source, but attributed its information to "people with knowledge of the matter," stating that "Ryan White, an SEC spokesman, declined to comment."  The article also noted that Lemelson "hasn't been accused of wrongdoing" and that the investigation was but a "preliminary step."

After publication, Lemelson requested that Bloomberg retract its story.  He sent Jesse Westbrook, Robinson's editor, a press release denying the existence of an investigation or any conduct that could be the basis of that investigation.  Bloomberg did not retract the article, but did update its content with a quotation from Lemelson's press release.  In a TV interview on Bloomberg's news channel that aired later that day (after Lemelson's request for retraction), Robinson repeated many of the article's allegations.

Lemelson filed a four-count complaint in Massachusetts state court against Bloomberg, Robinson, and Westbrook, alleging: defamation (count I); commercial disparagement (count II); negligence (count III); and intentional interference with prospective economic advantage (count IV). Defendants removed the case to federal court on the basis of diversity jurisdiction. In his complaint, Lemelson averred that the article's primary contention -- that he was the subject of an SEC investigation -- was false. The SEC, Lemelson asserted, had informed his lawyers that he and Lemelson Capital had never been the subject of any SEC investigation. Lemelson claimed that Bloomberg published the article knowing its falsity, or, at least, with reckless disregard for its truth.

The district court concluded that Lemelson was required to plausibly allege actual malice because he was at least a limited-purpose public figure. Finding that he had failed to do so, the district court granted defendants' motion to dismiss counts I through III, and concluded that Lemelson failed to allege sufficient facts to make out a claim under count IV. Lemelson now appeals the dismissal of counts I, II, and IV.

## II.

We review the decision to grant a Rule 12(b)(6) motion to dismiss de novo. Schatz, 669 F.3d at 55. In conducting this inquiry, "we accept as true all well-pleaded facts alleged in the

complaint and draw all reasonable inferences therefrom in the pleader's favor." Rodríguez-Reyes v. Molina-Rodríguez, 711 F.3d 49, 52-53 (1st Cir. 2013) (quoting Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011)).  We do not credit, however, legal labels or conclusions, or statements that merely rehash elements of the cause of action.  Schatz, 699 F.3d at 55.  Training our attention on the non-speculative, non-conclusory facts and reasonable inferences implied by those facts, we ask whether it is plausible, as opposed to merely possible, that plaintiff's complaint narrates a claim for relief.  Id.

### A.

We begin with Lemelson's defamation claim.  To get to the crux of this appeal, we skip over the state-law elements of defamation, and focus our attention on the issue of actual malice. See Schatz, 669 F.3d at 56 (taking a similar approach).

Over fifty years ago, the Supreme Court held that the First Amendment requires a public official advancing a defamation claim to show by clear and convincing evidence that the defendant acted with actual malice: that is, with knowledge of the statement's falsity or reckless disregard for its truth.  See N.Y. Times v. Sullivan, 376 U.S. 254, 279-80 (1964); see also Harte-Hanks Commc'ns, Inc. v. Connaughton, 491 U.S. 657, 659 (1989) (noting that, to recover, the showing must be made by clear and convincing proof).  In the decades since, the Court has extended

the requirement of actual malice beyond general public figures, to an otherwise private figure who "voluntary injects himself or is drawn into a particular public controversy," thus becoming a limited-purpose public figure for that particular controversy. Gertz v. Robert Welch, Inc., 418 U.S. 323, 351 (1974). Here, the district court found that Lemelson qualified as at least a limited-purpose public figure, if not a general public figure, and therefore had to demonstrate actual malice in order to prevail in this lawsuit. Lemelson does not challenge this finding on appeal, and instead accepts that he must allege facts plausibly establishing actual malice in order for his claim to survive. We proceed accordingly.

Actual malice is a "wholly subjective" standard. Levesque v. Doocy, 560 F.3d 82, 90 (1st Cir. 2009). Thus, a mere deviation from reasonably prudent conduct will not suffice. Id. Similarly, showing a departure from industry standards, alone, is insufficient to allege actual malice, even if that departure is "extreme." Connaughton, 491 U.S. at 665. Rather, to satisfy the actual malice requirement, a plaintiff must point to "sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication," St. Amant v. Thompson, 390 U.S. 727, 731 (1st Cir. 1968), or "actually had a 'high degree of awareness of . . . probable falsity," Connaughton, 491 U.S. at 688 (quoting Garrison v.

- 8 -

Louisiana, 379 U.S. 64, 74 (1964)). Because direct evidence of subjective belief rarely exists, a "court will typically infer actual malice from objective facts." Bose Corp. v. Consumers Union of U.S., Inc., 692 F.2d 189, 196 (1st Cir. 1982), aff'd, 466 U.S. 485 (1984); accord Levesque, 560 F.3d at 90. On a Rule 12(b)(6) motion to dismiss, we do not concern ourselves with questions of evidentiary sufficiency, see Evergreen Partnering Grp., Inc. v. Pactiv Corp., 720 F.3d 33, 43 (1st Cir. 2013), but ask only whether Lemelson "la[id] out enough facts from which malice might reasonably be inferred," Schatz, 669 F.3d at 58. Said otherwise, Lemelson's well-pleaded facts must "'nudge[]' his actual malice claim 'across the line from conceivable to plausible.'" Id. (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). With this law in mind, we begin our analysis with several important points of context.

First, the complaint alleges no plausible motive for Bloomberg to have fabricated from whole cloth any story critical of Lemelson. See Bose Corp., 692 F.2d at 196 (listing "motive" as one of the facts on which a complaint "should provide evidence" to allow an inference of actual malice). Nor does the complaint contend that Bloomberg knowingly relied on a source who had a clear motive to fabricate the story.

Second, the complaint and unchallenged portions of the article itself point to undisputed facts that preclude us from

inferring that the notion of an SEC investigation of Lemelson would have seemed so implausible as to cast doubt on Bloomberg's belief that it was true. Lemelson does not deny that he had indeed both shorted the securities of Ligand and published statements critical of Ligand, which were followed by a drop in Ligand's stock price. While none of that information itself evidences any wrongdoing, it certainly provided ample background against which the reports from unnamed sources of an investigation of Lemelson hardly seemed surprising.

Third, the complaint concedes that, before publishing its story, Bloomberg reached out repeatedly to secure an interview with Lemelson and to otherwise solicit his comment, and then published his denial of the claim that he was under investigation. That conduct tends to undercut any inference of actual malice.

Fourth, while the complaint alleges "on information and belief" that Bloomberg did not contact the SEC, the article states that "Ryan White, an SEC spokesman, declined to comment." The complaint avoids taking any direct issue with this assertion. To the contrary, Lemelson admitted in the district court that "the SEC has a policy of not confirming or denying investigations of particular individuals."

Collectively, these points cut strongly against drawing any inference that the article was the product of malice. On appeal, Lemelson's principal rejoinder to the force of these points

is to assert that Bloomberg actually fabricated the story out of whole cloth, without any source, much less the unnamed sources cited in the article. Lemelson, however, never advanced such a bold and frontal attack on the provenance of the article in his complaint, perhaps because he had no basis for making such a claim given the context in which this all played out. Nor did he develop any such argument before the district court. These omissions prevent him from relying on such an argument now. See Teamsters, Chauffeurs, Warehousemen & Helpers Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992) ("If any principle is settled in this circuit, it is that, absent the most extraordinary circumstances, legal theories not raised squarely in the lower court cannot be broached for the first time on appeal.").

Lemelson also contends that Bloomberg failed to fact-check its story or test the accuracy of its information. Lemelson did preserve this argument. Specifically, he alleged in his complaint that Bloomberg published its story "without contacting anyone at the SEC to verify whether or not Plaintiff was being investigated." As we have already explained, though, the complaint does not challenge the article's statement that the reporter did try to get a comment from the SEC spokesman, whom it named. Lemelson also concedes that it was not possible to get anyone at the SEC to verify or refute the existence of an investigation. And Lemelson admits that Bloomberg repeatedly reached out to him

for his side of the story, and included his denial in the story itself.

Moreover, "failure to investigate before publishing, even when a reasonably prudent person would have done so, is not sufficient to establish reckless disregard."  Connaughton, 491 U.S. at 688.  Not even an "extreme departure from professional standards" can do the trick.  Howard, 294 F.3d at 252 (quoting Connaughton, 419 U.S. at 665).  A fortiori, an investigation that included an attempt to obtain SEC comment and repeated inquiries of Lemelson trying to confirm or rebut facially plausible reports from other sources raised no inference of reckless disregard.

That being said, "the purposeful avoidance of the truth is in a different category."  Connaughton, 491 U.S. at 692.  Thus, actual malice can be shown where the publisher is in possession of information that seriously undermines the truth of its story, or deliberately decides not to acquire information that would confirm the probable falsity of its report.  See id. at 692-93; Howard, 294 F.3d at 254-55.  But Lemelson points to no such facts.

Lemelson does fault Bloomberg for not including in its article two statements that Lemelson made to Robinson in their phone call: that Lemelson knew of an SEC investigation into Ligand, and that he had filed a whistleblower report concerning Ligand with the SEC three months earlier.  Lemelson contends that the inclusion of these facts would have made for a more "balanced" and

- 12 -

"fair account." This argument misses the mark. Only the omission of information that could "confirm the probable falsity" of the allegedly defamatory statements can give rise to an inference of actual malice. Connaughton, 491 U.S. at 692. An investigation into Ligand and Lemelson's participation in that investigation bears too little on the inference Lemelson would have us draw -- that it was unlikely that the SEC was investigating Lemelson -- to support a claim that failing to mention these facts implied malice. To the contrary, Lemelson's report that the SEC was looking into Ligand actually made it more plausible that he might be of interest to the SEC as well. Nor does Lemelson point to any other fact from which we could conclude that there were "obvious reason[s] to doubt [the] veracity" of the source's information. Levesque, 560 F.3d at 90. Thus, absent more, Lemelson has not laid out sufficient facts to push his allegation of actual malice "across the line from conceivable to plausible." Schatz, 669 F.3d at 58 (quoting Twombly, 550 U.S. at 570). Therefore, his defamation claim cannot survive.

**B.**

Lemelson's remaining two counts advanced in this appeal fare no better. Lemelson concedes -- and we thus assume -- that his commercial disparagement claim rises and falls with our conclusion as to actual malice regarding defamation. It thus falls. And, in his brief on appeal, Lemelson does little more

- 13 -

than restate the elements of his count for "intentional interference with prospective economic advantage." Such cursory treatment does not preserve the issue for our review, and we deem it waived. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

## III.

For the foregoing reasons, we affirm the dismissal of Lemelson's complaint.