# United States Court of Appeals
## For the First Circuit

No. 20-1509

CHIANY CRUZ-ARCE, on her own behalf and as legal representative
of minor child H.V.C.,

Plaintiff, Appellant,

v.

MANAGEMENT ADMINISTRATION SERVICES CORPORATION and LEANETTE
VÉLEZ,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Silvia L. Carreño-Coll, U.S. District Judge]

Before

Howard, Chief Judge,
Selya and Barron, Circuit Judges.

Javier A Rivera-Vaquer and Rivera Mercado & Rivera Cordero on
brief for appellant.
Luis N. Blanco-Matos on brief for appellees.

December 6, 2021

**SELYA**, **Circuit Judge**. Plaintiff-appellant Chiany Cruz-Arce, suing in her own right and on behalf of her minor child (H.V.C.), seeks to hold private parties liable as state actors under 42 U.S.C. § 1983. The plaintiff's federal claims hinge on her allegation that the defendants were performing a function traditionally and exclusively reserved to the state.[1] Because the amended complaint fails to allege sufficient facts to ground a plausible conclusion that the function performed by the defendants is, by tradition, an exclusive prerogative of the state, we affirm the district court's order of dismissal.

## I. BACKGROUND

Because this appeal arises out of a dismissal for failure to state a claim upon which relief could be granted, see Fed. R. Civ. P. 12(b)(6), we accept as true all well-pleaded facts adumbrated in the plaintiff's amended complaint, see Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011); SEC v. Tambone, 597 F.3d 436, 438 (1st Cir. 2010) (en banc). We rehearse the background of the case in that light and then trace its travel.

In 2015, the plaintiff was a tenant in the Manuel A. Pérez low-income housing project (the Project) in San Juan, Puerto

---

[1] For purposes of section 1983, Puerto Rico is the functional equivalent of a state. See Santiago v. Puerto Rico, 655 F.3d 61, 69 (1st Cir. 2011); see also 42 U.S.C. § 1983 (providing for liability for violations of federal rights "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory").

Rico. The Project is owned by the Puerto Rico Department of Housing (the Housing Department) and is administered through the Puerto Rico Public Housing Administration (the PRPHA). The Housing Department or the PRPHA, in turn, contracted with a private party, defendant-appellee Management Administration Services Corporation (MAS), to manage the Project.[2]

The plaintiff alleges that, following a change in her employment situation, she contacted MAS and sought to modify her monthly rent (as permitted by pertinent regulations). These negotiations began in the spring of 2015. During the next two years, the plaintiff and MAS wrangled over rent adjustments, retroactivity issues, and ostensible rent arrearages. On July 19, 2017, MAS initiated eviction proceedings against the plaintiff in a local Puerto Rico court. The plaintiff contested MAS's claims.

The plaintiff further alleges that — while the contested eviction proceedings were pending — MAS gratuitously placed her apartment on a list of vacant units given to the Puerto Rico Police Department pursuant to a "policy and agreement." The purpose of such a list was to help the police in identifying possible illegal arms- and drug-trafficking activities conducted in vacant

_____

[2] In the amended complaint, the plaintiff refers to the Housing Department as the contracting party. Her brief, however, refers to the PRPHA as the contracting party. For present purposes, this is a distinction without a difference. We therefore assume — for ease in exposition — that the PRPHA engaged MAS.

apartments. After receiving this listing, the police raided the plaintiff's apartment, forcing the locks and ransacking the interior. The plaintiff asserts that the officers' actions incident to the search caused her and her autistic child "severe emotional distress," requiring medical attention.

Based on the communication breakdowns and what she deemed to be an illegal search, the plaintiff invoked section 1983 and brought this suit against MAS and its then-administrator, Leanette Vélez, in the federal district court. The parties agreed to proceed before a magistrate judge. See 28 U.S.C. § 636(c); Fed. R. Civ. P. 73(b).[3] In due course, the plaintiff served an amended complaint containing three counts: count 1 alleged violations of the Fourth and Fourteenth Amendments related to the search; count 2 alleged denials of due process related to the plaintiff's travails regarding the rent-adjustment negotiations and eviction proceedings; and count 3 alleged pendant claims for emotional distress under Article 1802 of the Puerto Rico Civil Code.

As pleaded, the two counts of the amended complaint that invoked section 1983 (counts 1 and 2) hinged on the question of whether the defendants were "acting under color of state law" and,

---

[3] While the case was pending, the magistrate judge was appointed to the district court. In that capacity, she retained jurisdiction over the case.

- 4 -

thus, could be held liable as state actors. The operative allegations of the amended complaint that bore on this question were sparse. First, the plaintiff alleged that "[b]y law, the Government of Puerto Rico[,] through the Housing Department, is in charge of the operations and administration of the residential community of Manuel A Perez." Second, she alleged that the Housing Department, "instead of administrating the residential community, entered into a services contract with [MAS] to supply the same in [its] stead." The plaintiff made no other allegations concerning the relationship between MAS and the government of Puerto Rico, nor did her amended complaint contain any facts bearing on the issue of whether MAS was carrying out a traditional and exclusive state function.

The defendants moved to dismiss the amended complaint for failure to state a claim upon which relief could be granted. See Fed. R. Civ. P. 12(b)(6). The plaintiff opposed the motion. She contended, in conclusory fashion, that MAS was exercising an exclusive public function and could therefore be considered a state actor. Surveying the plaintiff's allegations and contentions, the district court found her federal claims wanting and granted the defendants' motion to dismiss. The court determined that the amended complaint failed to state any actionable federal claims because it did not contain sufficient facts to ground a conclusion that MAS was performing an exclusive public function. See, e.g.,

- 5 -

Santiago v. Puerto Rico, 655 F.3d 61, 68-69 (1st Cir. 2011). It then dismissed the remaining state-law claims without prejudice. This timely appeal followed.

## II. ANALYSIS

We review a dismissal for failure to state a claim de novo. See Haley, 657 F.3d at 46; Tambone, 597 F.3d at 441. In conducting this tamisage, we accept all well-pleaded, non-conclusory facts set forth in the complaint as true and draw all reasonable inferences therefrom to the pleader's behoof. See Ashcroft v. Iqbal, 556 U.S. 662, 681 (2009); Haley, 657 F.3d at 46. As relevant here, we may augment those facts and inferences with facts that are matters of public record or otherwise susceptible to judicial notice. See Haley, 657 F.3d at 46.

It is by now common ground that a complaint must contain only a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although this is a low bar, it still requires more than a cascade of conclusory allegations: at a minimum, the complaint must "contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As we have explained, "[i]f the factual allegations in the complaint are too meager, vague, or conclusory to remove the possibility of relief from the realm of mere conjecture, the complaint is open to

dismissal." Tambone, 597 F.3d at 442 (citing Twombly, 550 U.S. at 555). It is against this backdrop that we scrutinize the plaintiff's amended complaint.

We begin with bedrock. Section 1983 furnishes a private right of action against any person who, while acting under color of state law, deprives another (or causes another to be deprived) of rights secured either by the Constitution or by federal law. See 42 U.S.C. § 1983; see also Santiago, 655 F.3d at 68. To make out a section 1983 claim, a plaintiff must allege facts sufficient to show that the defendants acted under color of state law and caused the deprivation of federal rights. See Santiago, 655 F.3d at 68. This "under color of state law" requirement lies at the epicenter of the appeal that is before us.

Section 1983's "under color of state law" requirement has long been regarded as functionally equivalent to the "state action" requirement of the Fourteenth Amendment. See United States v. Price, 383 U.S. 787, 794 n.7 (1966); Perkins v. Londonderry Basketball Club, 196 F.3d 13, 17 n.1 (1st Cir. 1999). If the challenged conduct cannot be classified as state action, a section 1983 claim necessarily fails. See Santiago, 655 F.3d at 68.

In the mine-run of cases, state action will derive from the conduct of government actors, that is, government officials or employees. See, e.g., Lugar v. Edmondson Oil Co., 457 U.S. 922, 936-39 (1982). Even so, when the conduct of a private party can

be "fairly attributable to the State," that conduct may constitute state action and, as such, engage the gears of section 1983. Id. at 937. Determining whether a private party's conduct amounts to state action demands a fact-intensive and context-specific inquiry. See Burton v. Wilmington Parking Auth., 365 U.S. 715, 722 (1961) (observing that "[o]nly by sifting facts and weighing circumstances can the nonobvious involvement of the State in private conduct be attributed its true significance").

Because some constitutionally assured rights (such as the right to due process) may be manifested in a nearly infinite variety of applications, courts have resisted attempts to define with granular precision the universe of circumstances in which a private party may be considered to be acting under color of state law. See id. Notwithstanding this need for individualized consideration, we have noted three general ways in which a private party may become a state actor within the purview of section 1983. See Santiago, 655 F.3d at 68. First, a private party may be considered a state actor if it assumes a public function which, by tradition, is exclusively reserved to the state (the public function test). See id. Second, a private party may be considered a state actor if its conduct is coerced or significantly encouraged by the state (the state compulsion test). See id. Third, a private party may be considered a state actor if it and the state have entered into so symbiotic a relationship that they have become

joint participants in the challenged conduct (the nexus/joint action test). See id.

To defeat a motion to dismiss predicated on the "under color of state law" requirement, a plaintiff need not specifically allege which of these three tests applies in her particular case. Cf. Bennett v. Schmidt, 153 F.3d 516, 518 (7th Cir. 1998) (explaining that "[c]omplaints need not plead law or match facts to every element of a legal theory"). Nor must the plaintiff intone some catechism of magic words to describe the relationship between the private party and the state. In the last analysis, the allegations in the complaint, supplemented with reasonable inferences therefrom and matters susceptible to judicial notice, must comprise a factual predicate sufficient to render it plausible that one of these tests can be satisfied. See Mead v. Indep. Ass'n, 684 F.3d 226, 232 (1st Cir. 2012).

Here, the plaintiff stakes her section 1983 claims solely on the public function test.[4] But even when we take as true all well-pleaded facts set forth in the amended complaint and draw

---

[4] The plaintiff did not argue below, and does not argue in this court, that either the state compulsion test or the nexus/joint action test applies to her case. Because no such arguments have been made, we deem them waived. See Teamsters Union, Local No. 59 v. Superline Transp. Co., 953 F.2d 17, 21 (1st Cir. 1992); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990); see also Mead, 684 F.3d at 231-32 (analyzing claims under state compulsion test alone because plaintiff only made arguments under that test).

all reasonable inferences therefrom in the plaintiff's favor, the function that the plaintiff has attributed to the defendants is not plausibly a public function that, by tradition, is exclusively reserved to the state.  We explain briefly.

The public function test "is designed to flush out a State's attempt to evade its responsibilities by delegating them to private entities."  Perkins, 196 F.3d at 18-19.  This test prevents a state from shirking its traditional and exclusive sovereign responsibilities by the simple expedient of recruiting a private party to act in its stead.  See Ponce v. Basketball Fed'n of P.R., 760 F.2d 375, 379 (1st Cir. 1985).  So, too, it prevents a state from turning a blind eye to unconstitutional conduct committed by a private party carrying out traditionally exclusive sovereign responsibilities under a contract with the state.  See id.

Importantly, the public function test does not turn solely on whether a private party is performing some public function (that is, a public purpose being executed on behalf of the state).  It turns instead on whether the public function is one that has been "traditionally exclusively reserved to the State."  Jackson v. Metro. Edison Co., 419 U.S. 345, 352 (1974); see Santiago, 655 F.3d at 69 (explaining that "[e]xclusivity is an important qualifier, and its presence severely limits the range of eligible activities").  The Supreme Court has found this aspect of

the test to be satisfied only in narrowly circumscribed contexts — contexts in which a particular function rests at the core of a state's sovereign responsibilities. These contexts include the administration of elections, see Nixon v. Condon, 286 U.S. 73, 89 (1932); the management of a town in which the private party serves almost all the functions of government, see Marsh v. Alabama, 326 U.S. 501, 509 (1946); the administration and provision of health care in prisons, see West v. Atkins, 487 U.S. 42, 54 (1988); and — in special circumstances — the operation of a municipal park, see Evans v. Newton, 382 U.S. 296, 301 (1966).

Cases in which courts have rejected claims that the public function test has been satisfied are equally illuminating. Many of those cases involve services rendered by private parties in areas that are highly regulated, proximate to social welfare programs, or both. For example, courts have held that the public function test has not been satisfied when a private party has assumed responsibility for the bonded warehousing of guns confiscated by state police, see Jarvis v. Village Gun Shop, Inc., 805 F.3d 1, 11-12 (1st Cir. 2015); the involuntary commitment of the mentally ill, see Estades-Negroni v. CPC Hosp. San Juan Capestrano, 412 F.3d 1, 8-9 (1st Cir. 2005); the education of disadvantaged high school students, see Rendell-Baker v. Kohn, 457 U.S. 830, 842 (1982); and the transportation of students to and from public schools, see Santiago, 655 F.3d at 69-70.

- 11 -

These authorities guide our inquiry. The plaintiff argues, in effect, that low-income public housing, by definition, is the exclusive responsibility of the state. But placing the adjective "public" as a descriptor of any service would operate to place that service exclusively in the public domain. We reject so facile a use of a self-fulfilling prophecy. It would defeat the purpose of the public function test if qualifying functions could be defined tautologically by plaintiffs.

The short of it is that the outcome of the public function test does not depend on creative labeling. It is the historical facts that matter most. See, e.g., id. at 70 (noting history of school buses in public function test analysis); Rockwell v. Cape Cod Hosp., 26 F.3d 254, 258-60 (1st Cir. 1994) (surveying history of involuntary commitment of mentally ill persons when deciding whether public function test has been satisfied). Although we do not gainsay that the state is the exclusive provider of state-owned low-income housing, it is not — and has not been — the exclusive provider of low-income housing writ large.

The crux of the matter is that the provision of low-income housing has never been exclusive to the government, either in Puerto Rico or elsewhere in the United States. The plaintiff's amended complaint contains no facts that support a contrary conclusion. Nor does the historical record counsel in favor of such a conclusion: over time, much low-income housing has been

provided by private landlords, operating in a wide variety of guises. See, e.g., AMTAX Holdings 227, LLC v. Tenants' Dev. II Corp., 15 F.4th 551, 553 (1st Cir. 2021) (describing tax credit incentivizing private development of low-income housing); One & Ken Valley Hous. Grp. v. Maine State Hous. Auth., 716 F.3d 218, 220-21 (1st Cir. 2013) (discussing rental subsidies to private landlords for low-income housing).

In an effort to change the trajectory of the debate, the plaintiff relies heavily on the purposes and functions of the PRPHA under Puerto Rico law. In particular, she cites a statute that created the PRPHA. See P.R. Laws Ann. tit. 17, § 1002. That statute, she notes, ascribes to the PRPHA the "purpose and function of achieving a highly efficient administration of public residential projects." Id. And as the plaintiff points out, that statute also declares that the PRPHA "shall have the responsibility of making decisions and executing the programs, systems, methods and procedures to . . . [p]lan, organize, direct and coordinate all ordinary and extraordinary administrative activities." Id. § 1002(a).

We do not quarrel with the plaintiff's description of what Puerto Rico law provides. But nothing in the statutory scheme suggests — let alone requires — that the administration and provision of low-income housing in Puerto Rico is the exclusive prerogative of the state. By the same token, the other housing

- 13 -

regulations (federal and state) mentioned by the plaintiff, see, e.g., Admission to, and Occupancy of, Public Housing, 24 C.F.R. §§ 960.101-960.707; P.R. Regs. Vivienda Reg. 6391, repealed by Reg. 8624, show little more than that the field of low-income housing is subject to significant regulation. They do not indicate that the asserted public function — providing low-income housing — is an exclusive function of the state.

To withstand a Rule 12(b)(6) motion, a plaintiff must plead "sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" Haley, 657 F.3d at 46 (quoting Iqbal, 556 U.S. at 678). In this instance, the plaintiff has failed to marshal facts sufficient to render plausible her claim that the defendants were exercising powers "traditionally exclusively reserved to the State." Jackson, 419 U.S. at 352. It follows inexorably that the district court did not err in determining that the plaintiff's amended complaint failed to state a claim under section 1983. Consequently, the district court did not err in granting the defendants' motion to dismiss.[5]

---

[5] Once the district court concluded that the plaintiff had failed to plead a plausible claim under section 1983, it appropriately declined to exercise supplemental jurisdiction over the plaintiff's state-law claims (count 3). See 28 U.S.C. § 1367(c)(3); see also Rivera-Díaz v. Humana Ins. of P.R., Inc., 748 F.3d 387, 392 (1st Cir. 2014).

## III. CONCLUSION

We need go no further.  For the reasons elucidated above, the judgment of the district court is


**<u>Affirmed</u>**.