[PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 22-11270

_____

PROJECT VERITAS,

Plaintiff-Appellant,

*versus*

CABLE NEWS NETWORK, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:21-cv-01722-SCJ

_____

Before BRANCH, BRASHER, and ED CARNES, Circuit Judges.

BRANCH, Circuit Judge:

On February 11, 2021, Twitter[1] suspended from its platform Project Veritas ("Veritas")—an investigative journalistic organization most well-known for its undercover reporting. Veritas's suspension made headlines. On February 15, Ana Cabrera and Brian Stelter, Cable News Network's ("CNN") then-on-air talent, discussed Twitter's ban of Veritas during a broadcast. Their discussion, and specifically comments made by Cabrera during their discussion, is the basis of this defamation lawsuit.

Cabrera suggested on-air that Twitter banned Veritas for "promoting misinformation." Veritas disagreed with this characterization and demanded correction, contending that Twitter banned Veritas for violating Twitter's "publication of private information," or "doxxing," policy. When CNN refused to issue a retraction, Veritas sued for defamation. The district court granted CNN's motion to dismiss for failure to state a claim, finding that Cabrera's statements were substantially true and thus not actionable under applicable New York defamation law. Veritas appealed.

After careful review and with the benefit of oral argument, we conclude that Veritas plausibly alleged a defamation claim under New York law. And although the district court did not reach

---

[1] "Since the events of this suit, Twitter has merged into X Corp. and is now known as X." *Murthy v. Missouri*, 144 S. Ct. 1972, 1982 n.1 (2024). "For the sake of clarity, we will refer to th[is] platform[] as Twitter," as it was known during the events of this suit, *id.*, and we refer to "tweets" rather than "posts."

the issue, we also hold that Veritas plausibly alleged that the statements were published with actual malice, an additional requirement imposed by the First Amendment in a defamation suit involving public figures.[2]   Accordingly, we reverse the district court's decision and remand for further proceedings.

## I.    Factual Background[3]

Veritas made a name for itself through undercover and whistleblower reporting that aims to "investigate[] and expose[] corruption, dishonesty, self-dealing, waste, fraud, and other misconduct in both public and private institutions." It operated an active Twitter account until February 2021.

On February 11, 2021, Veritas tweeted a video showing its reporters trying to interview Guy Rosen, then a Facebook vice president, outside a residence. Neither the video nor the text of the tweet accompanying the video contained any information related to the street, city, or state where the attempted interview took place. That said, a house number could be seen in the background of the video. That same day, Twitter suspended the official Veritas account on the grounds that the video violated Twitter's policy against publishing private information (informally known as a

---

[2] Veritas concedes that it is a public figure for purposes of this case.

[3] Because this case comes to us at the motion-to-dismiss stage, we draw all facts from Veritas's complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "We accept factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *See Tims v. LGE Cmty. Credit Union*, 935 F.3d 1228, 1236 (11th Cir. 2019).

"doxxing" policy).[4]  The relevant policy at the time, titled "Private information policy," provided:

> You may not publish or post other people's private information without their express authorization and permission.  We also prohibit threatening to expose private information or incentivizing others to do so.  Sharing someone's private information online without their permission, sometimes called doxxing, is a breach of their privacy and of the Twitter Rules . . . .  Sharing private information can pose serious safety and security risks for those affected and can lead to physical, emotional, and financial hardship.[5]

Initial communications between Veritas and Twitter suggested that the suspension was temporary, allowing Veritas either to delete the tweet or to appeal the decision.

Meanwhile, Brian Fung, for CNN Business, immediately reported that Twitter permanently banned Veritas;[6] he accurately

---

[4] Paragraph 27 of the Complaint incorrectly lists the date of "February 22," but, as the rest of the Complaint makes clear, Twitter suspended Veritas's account on February 11.

[5] The policy at the time, submitted by CNN as an exhibit to a declaration, may be considered without converting the motion to dismiss into a motion for summary judgment because it "is (1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024).

[6] Veritas alleges upon information and belief that Twitter decided to make the suspension permanent, rather than temporary, based on CNN's reporting.

noted, however, that the ban was for violating "the platform's policies prohibiting sharing—or threats of sharing—other people's private information without consent."[7]  Cabrera similarly tweeted from her own account, stating that Twitter banned Veritas for "repeated violations of Twitter's policies prohibiting the sharing—or threats of sharing—of other people's private information without consent."[8]

Four days later, on February 15, 2021, Cabrera and Stelter discussed Veritas's ban live on-air, now pivoting to a completely different reason behind the ban.  Cabrera said:

> We're starting to see companies cracking down to try to stop the spread of misinformation and to hold some people who are spreading it accountable, Brian. For example, Twitter has suspended the account of Project Veritas, a conservative activist, uh, activist organization.  At least that [is] how they couch themselves with followers . . . .  But this is part of a much broader crackdown, as we mentioned, by social media giants that are promoting misinformation.

Stelter    responded,    "Uh,    yes . . . Project    Veritas,    a    very controversial conservative group, uh, got swept up in a Twitter policy by violating multiple rules on the site."  Veritas's general counsel e-mailed CNN's general counsel, "objecting to the

---

[7] *See* Brian Fung, *Twitter Permanently Bans Project Veritas Account*, CNN (Feb. 11, 2021, 7:38 P.M.), https://perma.cc/P4H5-53RH.

[8] Ana  Cabrera  (@AnaCabrera),  Twitter  (Feb.  11,  2021,  4:27  P.M.), https://perma.cc/XR2B-ELYR.

misrepresentation of the reason . . . for [its] banning" and demanding a retraction and correction. CNN never retracted or corrected its reporting.[9]

Veritas sued CNN on April 26, 2021, advancing a single defamation claim. Veritas's complaint alleged that the on-air statements made by Cabrera (and affirmed by Stelter) on February 15, 2021, were false. Specifically, it alleged that Cabrera's statements related to the reason for Veritas's Twitter ban—promoting misinformation—were "provably false" because Veritas was, in reality, banned for "truthfully publish[ing] supposed 'private information.'" Veritas alleged that Cabrera's statements were made with actual malice because they "were made with full knowledge" of their falsity, as shown by Cabrera's accurate tweet on February 11 that Veritas was banned for publishing private information. Veritas claimed that the February 15 on-air statements were "extremely damaging to its reputation" and credibility, and "impute[d] general disqualification" to Veritas as a journalistic organization. It said that the purported defamation "speaks directly to [Veritas's] core mission of conducting investigative journalism," and "falsely maligned" Veritas's "truthfulness," "integrity," and "credibility."

---

[9] After CNN's coverage, Twitter also permanently banned the account of Veritas's associated organization, Project Veritas Action, claiming that the Project Veritas Action account was created as an attempt to bypass Twitter's ban of the official Veritas account.

CNN moved to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), arguing (1) that Cabrera's statements were substantially true and thus not actionable, and (2) that Veritas had not plausibly alleged actual malice. Following full briefing from the parties, the district court granted CNN's motion to dismiss.

As an initial matter, the district court determined that New York law applied to Veritas's claim[10] and that Veritas's claim focused on these three sentences from Cabrera's broadcast:

> (1) that social media companies were "cracking down to stop the spread of misinformation and to hold some people who are spreading it accountable"; (2) "For example, Twitter has suspended the account of Project Veritas . . . ."; and (3) "This is part of a much broader crackdown as we mentioned by social media giants that are promoting misinformation."

---

[10] Because Georgia was the forum state for this action, the district court conducted a choice of law analysis under Georgia's choice of law rules, which, in tort cases, apply the doctrine of *lex loci delicti*. Under this doctrine, the action "is governed by the substantive law of the state where the tort was committed." *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413, 414 (Ga. 2005) (quotation omitted). The district court determined that, for purposes of a multistate defamation case, "the place of the wrong" is the state or states where the plaintiff is domiciled. Further, the district court found that Veritas, domiciled in Virginia (its state of incorporation) and New York (its principal place of business), felt the alleged injury "more principally" in its principal place of business and thus New York precedent should apply. Neither party challenges this finding on appeal.

The district court concluded that Veritas made a plausible showing of defamation by implication, rather than express defamation, under New York law "[b]ecause [Cabrera's] statements could be proven to be literally true in isolation, but plausibly defamatory when read as whole[.]" The district court also found that Veritas had plausibly alleged that Cabrera intended to make the defamatory implication or endorsed the inference that Veritas was suspended for spreading misinformation because "the entirety of the CNN segment was focused on the spread of misinformation and the sentence that immediately followed the 'for example' sentence . . . mentions a misinformation crackdown."

Turning to the merits of CNN's motion to dismiss, the district court applied the New York standard for substantial truth, asking whether the truth, as alleged by Veritas, would have had a similar effect on the mind of the audience as the alleged defamatory falsehood. Specifically, the district court compared the following statements in conducting its analysis:

- The pleaded truth: "Twitter has suspended the account of Project Veritas for violating a policy that prohibits *the sharing or threat of sharing of private information*"; and

- Cabrera's statements: "Twitter has suspended the account of Project Veritas for violating a policy that prohibits *the spreading or promoting of misinformation.*"

(emphasis in original). Comparing the effect each statement would have on the mind of the audience, the district court concluded that "the pleaded truth of being accused of violating a policy aimed at

protect[ing] individuals from coming to physical harm as a result of their information being shared similarly maligns a journalist's professional reputation"[11] compared to being accused of violating a misinformation policy.  (quotations omitted) (footnote omitted). While the district court acknowledged that "there is some difference" between such violations, "the distinction is not enough to make the statement at issue actionable as both violations are similarly damaging to the journalist's reputation."  Therefore, under the New York standard, the district court found that Cabrera's statements were substantially true and non-actionable. The district court said that the "same analysis applie[d] to . . . CNN's material falsity arguments based upon federal law."

Lastly, as for CNN's argument that Veritas had not plausibly alleged actual malice, the district court declined to address the issue because it found the substantial truth analysis determinative.

Veritas timely appealed the dismissal of its complaint.

## II.    Standard of Review

We review a district court's dismissal for failure to state a claim *de novo*.  *See Tims*, 935 F.3d at 1236.  "We accept factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff."  *Id*.  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual

---

[11] The district court said that the language of "protect[ing] individuals from coming to physical harm as a result of their information being shared" was "excerpted from the Twitter 'Private information policy[.]'"

allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alterations adopted) (internal quotations and citations omitted).  Thus, "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (quotations omitted).

## III.    Discussion

Veritas argues on appeal (1) that the district court erred in finding that Cabrera's statements were substantially true and thus not actionable under New York law, and (2) that, while the district court did not address the issue, Veritas plausibly alleged that Cabrera's statements were published with actual malice.  We agree with Veritas on both points.

### A.    *Veritas plausibly alleged that Cabrera's statements are actionable because they were not substantially true.*

The district court determined that Cabrera's statements were substantially true and thus not actionable.  On appeal, Veritas argues that the district court applied the wrong standard under New York law and that the statements (properly analyzed) were, in fact, not substantially true.  Veritas is correct on both arguments.

#### 1.    The district court applied the wrong standard in conducting the substantial truth analysis.

We first address whether the district court applied the wrong standard in conducting the substantial truth analysis.  According to

22-11270                Opinion of the Court                11

Veritas, rather than comparing the meaning of Cabrera's statements with the purported truth, the district court improperly weighed (1) the magnitude of reputational harm Veritas suffered from Cabrera's statements against (2) the magnitude of harm Veritas would have suffered if Cabrera had reported the purported truth. Veritas maintains that the test for substantial truth under New York law is not concerned with comparative harm but rather "focuses on whether the challenged statement conveys substantially the same facts as the truth."[12]

We start with a brief overview of New York defamation law.[13] In New York, there are two types of defamation: (1) express

---

[12] In the context of whether the district court applied the proper analysis in reaching its conclusion on defamation, CNN attempts to recast Veritas's argument as accusing the district court of applying two irrelevant types of analysis—a "libel-proof" analysis and an incremental harm analysis. Under the "libel-proof" doctrine, "a plaintiff's reputation with respect to a specific subject may be so badly tarnished that [it] cannot be further injured by allegedly false statements on that subject." *Guccione v. Hustler Mag., Inc.*, 800 F.2d 298, 303 (2d Cir. 1986). And the incremental harm doctrine "measures the incremental reputational harm inflicted by the challenged statements beyond the harm imposed by the nonactionable remainder of the [same] publication"—*i.e.*, whether nondefamatory statements within the same at-issue publication inflicted the same reputational harm as the allegedly defamatory statements. *Masson v. New Yorker Mag., Inc.*, 501 U.S. 496, 522 (1991) (quotations omitted); *see Church of Scientology Int'l v. Behar*, 238 F.3d 168, 176 (2d Cir. 2001). We do not read Veritas's arguments as advancing those issues on appeal.

[13] In analyzing Veritas's claim, like the district court, we apply New York's substantive law. We must accept and apply New York law as applied and interpreted by the highest court of the state—here, the Court of Appeals of

defamation, which involves false statements, and (2) defamation by implication, which "involves 'false suggestions, impressions and implications arising from otherwise truthful statements[.]'" *Levin v. McPhee*, 119 F.3d 189, 196 n.5 (2d Cir. 1997) (emphasis added) (quoting *Armstrong v. Simon & Schuster, Inc.*, 649 N.E.2d 825, 829 (N.Y. 1995)).[14]

In New York, the elements of a typical defamation claim (whether express defamation or defamation by implication) are: (1) "a false and defamatory statement concerning another"; (2) "unprivileged publication to a third party"; (3) "fault amounting at least to negligence on the part of the publisher"; and (4) "either actionability of the statement irrespective of special harm," *i.e.*,

---

New York—and its intermediate state appellate courts. *See West v. Am. Tel. & Tel. Co.*, 311 U.S. 223, 236 (1940) ("[T]he highest court of the state is the final arbiter of what is state law. When it has spoken, its pronouncement is to be accepted by federal courts as defining state law unless it has later given clear and persuasive indication that its pronouncement will be modified, limited or restricted."); *Stoner v. N.Y. Life Ins. Co.*, 311 U.S. 464, 467 (1940) (explaining that federal courts sitting in diversity must also "follow the decisions of intermediate state courts in the absence of convincing evidence that the highest court of the state would decide differently"). We also rely on well-reasoned and persuasive decisions from the Second Circuit that interpret New York law (as the Second Circuit encompasses New York).

[14] The district court concluded that Veritas alleged defamation by implication rather than express defamation. Veritas does not directly characterize its claim as express or by-implication in its opening brief—though it does assert in its reply brief that CNN expressly defamed it. We need not decide which species of defamation Veritas alleged, or linger over whether Veritas properly raised an argument for express defamation on appeal, because under either characterization Veritas wins both issues in this appeal.

defamation per se, "or the existence of special harm caused by the publication[.]" *Franklin v. Daily Holdings, Inc.*, 21 N.Y.S.3d 6, 10 (N.Y. App. Div. 2015) (quotations omitted); *Stepanov v. Dow Jones & Co.*, 987 N.Y.S.2d 37, 44 (N.Y. App. Div. 2014). Because the parties focus on whether Veritas has plausibly alleged that Cabrera's statements were false and defamatory under New York law, we center our analysis on the first element.

"Because the falsity of [a] statement is an element of the defamation claim, [a] statement's truth or substantial truth is an absolute defense[.]"[15] *Stepanov*, 987 N.Y.S.2d at 42. Under New York law, the test for substantial truth considers "whether the [defamatory statement] as published would have a different effect on the mind of the reader from that which the pleaded truth would have produced." *Fleckenstein v. Friedman*, 193 N.E. 537, 538 (N.Y.

---

[15] We may consider the issue of substantial truth as an absolute defense at the motion-to-dismiss stage because "a plaintiff in New York courts generally must identify how the defendant's statement was false to survive a motion to dismiss." *Tannerite Sports, LLC v. NBCUniversal News Grp., a division of NBCUniversal Media, LLC*, 864 F.3d 236, 245, 247 (2d Cir. 2017). New York courts have mostly discussed "substantial truth" in the context of express defamation. *See, e.g., Stepanov*, 987 N.Y.S.2d at 42 ("Insofar as plaintiffs' complaint is premised on express defamation, it must be dismissed, as these claims are based on substantially true statements that are not reasonably susceptible of defamatory connotations."). But the parties do not present (and our research does not reveal) any cases stating that "substantial truth" can only apply in express defamation cases, or that "substantial truth" cannot also be a valid defense for a defamation by implication claim. Based on our reading of New York cases, we interpret "substantial truth" as a defense to a defamation by implication claim.

1934).  "[I]f the statement would not have a different effect" in the mind of the audience than "that which the pleaded truth would have produced," then it is substantially true and thus not actionable.  *Franklin*, 21 N.Y.S.3d at 12 (quotations omitted). Therefore, "[u]nder New York law, it is not necessary to demonstrate complete accuracy to defeat a charge of [defamation]. It is only necessary that the gist or substance of the challenged statements be true." *Printers II, Inc. v. Pros. Publ'g, Inc.*, 784 F.2d 141, 146 (2d Cir. 1986).  A court must consider "[t]he entire publication, as well as the circumstances of its issuance . . . in terms of its effect upon the ordinary reader." *Silsdorf v. Levine*, 449 N.E.2d 716, 719 (N.Y. 1983).  In other words, courts compare what the average person would think or believe after hearing (1) the allegedly defamatory statement and (2) the purported truth (as alleged by the plaintiff). *See Fleckenstein*, 193 N.E. at 538 ("When the truth is so near to the facts as published that fine and shaded distinctions must be drawn and words pressed out of their ordinary usage to sustain a charge of [defamation], no legal harm has been done." (quotations omitted)).

Here, in conducting its substantial truth analysis, the district court concluded that "the pleaded truth of being accused of violating a policy aimed at protect[ing] individuals from coming to physical harm as a result of their information being shared similarly maligns a journalist's professional reputation" as being accused of violating a misinformation policy. *Project Veritas v. Cable News Network, Inc.*, 591 F. Supp. 3d 1322, 1332 (N.D. Ga. 2022) (alteration in original) (footnote omitted) (quotations omitted).  Thus, the

district court determined that, "[i]n essence," when swapping "the true for the false," "the damage to [plaintiff's] reputation would be no less." *Id.* (alteration in original) (quoting *Haynes v. Alfred A. Knopf, Inc.*, 8 F.3d 1222, 1228–29 (7th Cir. 1993) (concluding that "[t]he allegedly false facts about [Haynes] were variants of the true that did not paint him in a worse light[,]" and therefore "[t]hey were . . . substantially true")). We conclude that the district court misapplied New York law and improperly weighed reputational harm when it should have compared the facts and meaning of the defamatory statements with the purported truth.

In reaching its conclusion, the district court relied on *Haynes v. Alfred A. Knopf*, a decision from the Seventh Circuit applying Illinois law. 8 F.3d 1222. But *Haynes* does not have any applicability here because New York law, not Illinois law, is at issue. In contrast to New York, Illinois and the Seventh Circuit have adopted a substantial truth analysis that considers not only the factual similarity between the defamation and the pleaded truth with respect to meaning and understanding, but also the reputational harm inflicted by both formulations. *See id.* at 1228 ("Falsehoods that do not harm the plaintiff's reputation more than a full recital of the true facts about him would do are thus not actionable."). New York has a different approach.

Indeed, in applying the substantial truth analysis, the Second Circuit has not considered relative reputational harm under New York law. For example, in *Guccione v. Hustler Magazine, Inc.*, Guccione sued *Hustler* for defamation based on an article published

in 1983 that stated "[Guccione] is married and also has a live-in girlfriend[.]"  800 F.2d at 299.  Guccione maintained that the statement was not accurate because the article, in using the present tense, accused him of committing adultery at the time of publication in 1983, when he had only committed adultery between 1966 and 1979.  *Id.* at 302.  The Second Circuit held that the statement was substantially true, focusing on the difference between being labeled an "adulterer" versus a "former . . . adulterer."  *Id.*  The court observed that the "article label[ed] Guccione an adulterer" and, given "the extremely long duration of Guccione's adulterous conduct" and his recent divorce, the statement was substantially true.  *Id.*  The Second Circuit explained that "[t]he average reader would understand ['adulterer'] to include a man who unabashedly committed adultery for thirteen of the last seventeen years and whose adulterous behavior ended only because his wife ultimately divorced him."  *Id.* at 302–03.  Therefore, because "the truth [was] so near to the facts as published that fine and shaded distinctions [had to] be drawn . . . to sustain a charge of libel, no legal harm [was] done."  *Id.* at 303 (quotations omitted).  And although the defendants also argued that they were not liable because there was no "proof of injury to [Guccione's] reputation," the Second Circuit deemed "any impact . . . on Guccione's reputation" irrelevant.  *Id.* at 301.

Similarly, the United States District Court for the Southern District of New York has considered and rejected any influence of reputational harm on the substantial truth analysis.  In *Jewell v. NYP Holdings, Inc.*, the district court analyzed whether the *New York Post*

22-11270                Opinion of the Court                17

defamed Richard Jewell by calling him the "prime" or "main" suspect in the FBI's investigation following the bombing in Centennial Park at the 1996 Atlanta Olympics. 23 F. Supp. 2d 348, 367, 369 (S.D.N.Y. 1998). In ruling against Jewell, the court explicitly stated that "the substantial truth doctrine is not concerned with harm" and dismissed the contention that substantial truth involves any weighing of reputational harm under New York law at all.[16]  *Id.* at 394. "Thus," the district court

---

[16] CNN argues that the Southern District of New York's statement in *Jewell* regarding reputational harm was related to its discussion on incremental harm and is thus dicta. We disagree.

"We are not required to follow dicta," *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 762 (11th Cir. 2010), which encompasses "[a]ll statements that go beyond the facts of the case[.]" *Edwards v. Prime, Inc.*, 602 F.3d 1276, 1298 (11th Cir. 2010). In *Jewell*, the court directly confronted *both* whether the statements at issue were substantially true *and* whether the statements were actionable under the incremental harm defense. 23 F. Supp. 2d at 366–69, 387–96. In its discussion on incremental harm, the court explicitly differentiated that doctrine from the substantial truth doctrine under New York law, stating "as their names imply, the substantial truth doctrine is concerned with truth (regardless of harm) and the incremental harm analysis is concerned with harm (regardless of truth)." *Id.* at 394. Distinguishing the two doctrines did not exceed the bounds of the case, and therefore the statement at issue is not dicta. *See, e.g., United States v. Files*, 63 F.4th 920, 929 (11th Cir.), *cert. denied*, 144 S. Ct. 419 (2023) ("[W]e've treated as dicta . . . legal conclusions predicated on facts that aren't actually at issue, as well as aside-like statements about irrelevant legal matters." (footnote omitted)); *Pretka*, 608 F.3d at 762, 764 (concluding broad statements from another opinion are dicta because they are "unnecessary" to the court's decision).

concluded, "as [its] name[] impl[ies], the substantial truth doctrine is concerned with truth (regardless of harm)[.]" *Id.*

Accordingly, we hold that the district court improperly considered the potential reputational harms inflicted upon Veritas by the defamatory on-air statement made by Cabrera and the truth as pleaded by Veritas in its complaint.

> 2. Applying the proper standard, Veritas plausibly alleged that Cabrera's statements were not substantially true.

Applying the proper test for substantial truth under New York law, we next evaluate whether Cabrera's statements were substantially true as a matter of law and thus not actionable. Taking the allegations of the complaint as true, as we must at the pleadings stage, we conclude that Cabrera's statements were not substantially true, and Veritas has therefore stated a claim for defamation sufficient to defeat CNN's motion to dismiss under Rule 12(b)(6).

We start by comparing the pleaded truth with the alleged defamation. The pleaded truth is that Twitter suspended the account of Veritas for doxing— publishing "private information [of another] without [his] consent." The alleged defamation is that Cabrera suggested on-air on February 15 that Twitter suspended

---

But in any event, it does not matter. We do not purport to be bound by *Jewell*. Instead, we find the reasoned and considered explication of New York defamation law to be persuasive.

22-11270              Opinion of the Court                    19

Veritas's account for "promoting misinformation."   Recall that
Cabrera stated the following on-air:

- That social media companies were "cracking down to stop the spread of misinformation and to hold some people who are spreading it accountable";

- "For example, Twitter has suspended the account of Project Veritas . . . ."; and

- "[T]his is part of a much broader crackdown, as we mentioned, by social media giants that are promoting misinformation."

Again, under New York law, a defamatory statement is substantially true if "the overall gist or substance of the challenged statement is true." *Chau v. Lewis*, 771 F.3d 118, 129–30 (2d Cir. 2014) (quotations omitted).  Thus, the relevant question is whether the "gist" or "substance" of being suspended for "promoting misinformation" is the same as being suspended for "publishing private information of another without their consent." *See Printers II*, 784 F.2d at 146.  We conclude that it is not.

Veritas has plausibly alleged that the average viewer would conclude from Cabrera's statements that Twitter "cracked down" on Veritas and suspended it from the platform for promulgating misinformation.  Cabrera's statement about misinformation would plausibly "have a different effect" on the mind of the audience than the pleaded truth, *Franklin*, 21 N.Y.S.3d at 12 (quotations omitted)—that Veritas published accurate but private information.

Unlike *Hustler* in *Guccione*, which excluded the minor detail of precisely when Guccione was unfaithful to his wife but did not change the substantial truth of the accusation that he was an adulterer, *Guccione*, 800 F.2d at 302, Cabrera accused Veritas of substantially different behavior than that in which Veritas engaged. Under New York law, such a statement is not substantially true. *See Franklin*, 21 N.Y.S.3d at 12. Veritas committed one infraction; CNN accused it of a completely different one.

CNN resists this conclusion by contending the commentary in question was substantially true because, even if CNN had accurately identified that Veritas was suspended for violating Twitter's policy on publishing private information, the effect on Veritas's reputation in the minds of the average viewer would have been the same. In other words, according to CNN, the "gist" of the statements was true—Twitter banned Veritas as part of a broader crackdown by social media platforms more strictly enforcing content rules—and the actual reason behind the ban (be it spreading misinformation or violating a policy on publishing private information) is irrelevant because Veritas would have suffered the same reputational harm regardless of the reason. We disagree. As we explained previously, Veritas committed one infraction—it violated a policy regarding the publishing of private information, but CNN falsely accused it of violating a completely different policy—spreading misinformation. This distinction is not an inconsequential detail. Further, earlier in this section, we already rejected the contention that the substantial truth analysis involves any consideration of reputational harm.

Due to the foregoing, we conclude that Cabrera's February 15 statements are actionable because they were not substantially true.

B.    *Veritas plausibly alleged that Cabrera's statements were published with actual malice under the First Amendment.*

We next determine whether Veritas, as a public figure, plausibly alleged that Cabrera published the alleged defamatory statements with actual malice. Although the district court did not reach the issue of actual malice, Veritas argues that it plausibly alleged actual malice and that its defamation claim should proceed. We agree with Veritas.

When, as here, the plaintiff is a public figure, the First Amendment imposes additional requirements for state defamation claims. One requirement is that "the statement must be actually false."[17] *Coral Ridge Ministries Media, Inc. v. Amazon.com, Inc.*, 6 F.4th 1247, 1252 (11th Cir. 2021), *cert. denied*, 142 S. Ct. 2453 (2022). As another requirement, "a public-figure plaintiff must prove that the defendant made the alleged defamatory statement with 'actual malice'—'with knowledge that it was false or with reckless disregard of whether it was false or not.'" *Id.* (quoting *New York*

---

[17] Another requirement is that "alleged defamatory statement must be 'sufficiently factual to be susceptible of being prove[n] true or false.'" *Coral Ridge*, 6 F.4th at 1252 (quoting *Milkovich v. Lorain J. Co.*, 497 U.S. 1, 16, 21 (1990)). The parties do not challenge that this requirement was met, so we do not address it.

*Times v. Sullivan*, 376 U.S. 254, 279–80 (1964)).  We address these two requirements in turn.

> 1.    Veritas has plausibly alleged that Cabrera's statements were actually false.

In light of the above, to survive CNN's motion to dismiss, Veritas's complaint must have contained plausible allegations that permitted an inference that Cabrera's statements were actually false.  *See, e.g., Phila. Newspapers, Inc. v. Hepps*, 475 U.S. 767, 775 (1986) ("[A]s one might expect given the language of the Court in *New York Times* [*Co. v. Sullivan*], a public-figure plaintiff must show the falsity of the statements at issue in order to prevail in a suit for defamation."); *Garrison v. Louisiana*, 379 U.S. 64, 74 (1964) (stating that the Court held in *New York Times Co. v. Sullivan* that "a public official might be allowed the civil remedy only if he establishes that the utterance was *false*" (emphasis added)).

We already concluded in Part III(A)(2) that Cabrera's on-air statements on February 15 were not substantially true—*i.e.*, that her statements were false.  *See Masson*, 501 U.S. at 516 (stating that falsity "overlooks minor inaccuracies and concentrates upon substantial truth").  Veritas, at the motion-to-dismiss stage, has therefore plausibly alleged falsity under the First Amendment's actual malice requirement.

CNN resists our conclusion by arguing that a standard of "material falsity" applies, requiring an additional showing of

22-11270               Opinion of the Court                23

reputational harm for Veritas's defamation claim to succeed,[18] and it asks us to affirm on that alternative ground. *See Kernel Recs. Oy v. Mosley*, 694 F.3d 1294, 1309 (11th Cir. 2012) ("[T]his Court may affirm the judgment of the district court on any ground supported by the record, regardless of whether that ground was relied upon or even considered by the district court."). Meanwhile, Veritas disputes that such a requirement exists, contending that CNN built its argument on case law applying *state-law* material falsity requirements that mirror the standard for "substantial truth," and that CNN "invent[ed]" such a requirement at the federal level. However, we need not decide whether CNN is correct that a material falsity requirement (purportedly requiring an analysis of reputational harm) exists in First Amendment defamation law because, even assuming it does, Veritas wins.

CNN relies on *Air Wisconsin Airlines Corporation v. Hoeper* to argue that the First Amendment imposes a "material falsity" requirement. 571 U.S. 237 (2014). In *Air Wisconsin*, the Supreme Court interpreted an exception to the Aviation and Transportation

---

[18] CNN argues that Veritas failed to challenge the district court's material falsity determination on appeal and therefore abandoned the issue. In evaluating Veritas's opening brief, we note that Veritas generally challenged the district court's substantial truth holding, under which the district court concluded that CNN's material falsity argument fell. Accordingly, since Veritas plainly argues the overarching issue in its brief of whether the statement was false, we find no abandonment and reject CNN's contention.

Security Act's ("ATSA") immunity provision,[19] which "Congress patterned . . . after the [First Amendment's] actual malice standard[.]" *Id*. at 246 (citing *Sullivan*, 376 U.S. 254). The Court held that ATSA immunity could not be denied "without a determination that the disclosure was materially false." *Id*. at 248–49. In so holding, the Court explained that it "[has] long held that actual malice requires material falsity," citing prior defamation cases like *Sullivan*, *Masson*, and *Philadelphia Newspapers*. *Id*. at 246–47; *see also id*. at 247 ("Indeed, we have required more than mere falsity to establish actual malice: The falsity must be 'material.'" (quoting *Masson*, 501 U.S. at 517)). And the Court explained that a materially false statement is "one that would have a different effect on the mind of the reader or listener from that which the truth would have produced." *Id*. at 251 (alterations adopted) (quotations omitted). Accordingly, because "[t]hese holdings were settled when Congress enacted the ATSA," the Court "presume[d] that Congress meant to adopt the material falsity requirement when it incorporated the actual malice standard into the ATSA immunity exception." *Id*. at 248.

---

[19] Specifically, the ATSA immunity provision provides airlines and airline employee with immunity from civil liability for reporting "a possible violation of law or regulation, relating to air piracy, a threat to aircraft or passenger safety, or terrorism . . . . *See* 49 U.S.C. § 44941(a). This immunity, however, does not apply to "(1) any disclosure made with actual knowledge that the disclosure was false, inaccurate, or misleading; or (2) any disclosure made with reckless disregard as to the truth or falsity of that disclosure." *Id*. § 44941(b).

While *Air Wisconsin* did not involve a defamation claim, CNN nonetheless argues that it establishes that material falsity is a requirement of First Amendment defamation claims, and that material falsity focuses solely on the reputational effects of the statement.[20] Veritas adamantly resists this conclusion.

CNN's position may have some merit with regard to a requirement that the alleged defamatory statement must be materially false. For instance, although *Air Wisconsin* did not involve a defamation claim, the Supreme Court concluded that Congress had incorporated the First Amendment's actual malice standard from its defamation jurisprudence into the immunity exception at issue. *Id.* at 246. And in discussing the "long held" material falsity requirement, the Court referred to its prior defamation cases.[21] *Id.* at 246–47. On the other hand, whether "material falsity" necessarily requires an analysis of reputational harm is far from clear. *Air Wisconsin* may have implied that reputational harm was relevant, but it also involved an entirely

---

[20] Our conclusion in Part III(A)(1) that New York's substantial truth doctrine does not consider reputational harm has no bearing on whether the First Amendment considers reputational harm in its analysis of defamation claims by public figures.

[21] We note that two of our sister circuits have cited *Air Wisconsin* in discussing "material falsity" as part of the First Amendment's defamation standard. *Cheng v. Neumann*, 51 F.4th 438, 444 (1st Cir. 2022) ("Such a falsity must be material, not merely a minor inaccuracy." (citing *Air Wis. Airlines Corp.*, 571 U.S. at 247)); *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 861 F.3d 1081, 1107 (10th Cir. 2017) ("The plaintiff must show the statement is not only false, but 'materially false.'" (citing *Air Wis. Airlines Corp.*, 571 U.S. at 246–47)).

different issue. Moreover, the discussion in question—at least as it relates to implications for the defamation arena—is arguably dicta. *But see United States v. City of Hialeah*, 140 F.3d 968, 974 (11th Cir.1998) ("Even though that statement by the Supreme Court . . . was dictum, it is of considerable persuasive value, especially because it interprets the Court's own precedent.").

Regardless, we need not decide today whether *Air Wisconsin* imparts a material falsity requirement that considers reputational harm into the First Amendment context, because we conclude that Veritas has plausibly alleged that Cabrera's statements were not only false, but materially false. As already discussed, the factual meaning of Cabrera's statements "would have a different effect on the mind of the reader or listener from that which the truth would have produced." *Air Wis. Airlines Corp.*, 571 U.S. at 251 (alterations adopted) (quotations omitted). And it is at least plausible that Cabrera's statements malign Veritas's reputation. *See id.* at 250. It is an unremarkable observation that credibility and integrity are tantamount to the mission of journalists and their news organizations. Indeed, Veritas alleged that Cabrera's statements "impute[d] general disqualification" as a journalistic organization and "falsely maligned" Veritas's "truthfulness," "integrity," and "credibility." Without truthfulness, integrity, and credibility, a news organization cannot garner trust from its audience, and without trust, a news organization cannot operate competitively. Indeed, "editorial integrity . . . is to a newspaper or magazine what machinery is to a manufacturer. At least with respect to most news publications, credibility is central to their ultimate product and to

the conduct of the enterprise." *Newspaper Guild of Greater Phila., Loc. 10 v. N.L.R.B.*, 636 F.2d 550, 560 (D.C. Cir. 1980). The accusation of promulgating "misinformation" cuts straight to the heart of Veritas's journalistic obligations. So, it is plausible that the average, reasonable viewer of CNN's programming would think less favorably of Veritas having heard Cabrera accuse Veritas of promoting misinformation. *See Air Wis. Airlines Corp.*, 571 U.S. at 250–251 (stating that material falsity considers reputational harm).

We acknowledge that CNN and the district court may be correct that an accusation of publishing an individual's private information without consent can malign the reputation of a journalistic outfit and raise safety concerns. But it is nonetheless plausible that Cabrera's accusation of promoting misinformation works damage on Veritas. In other words, it is plausible that the reputational harm that arises from Cabrera's on-air statements "have a different effect on the mind of the [audience]" from that which the pleaded truth—that Veritas published a private house number in an unidentified city on an unidentified street—would have produced. *Id.* at 251 (alterations adopted) (quotations omitted).

For these reasons, Veritas has plausibly alleged that Cabrera's statements were false at the motion-to-dismiss stage. And even if a material falsity requirement applies, as indicated by *Air Wisconsin*, Veritas has met that heightened standard, too. *Id.* at 250–51.

2.    Veritas has plausibly alleged that CNN published the at-issue statements with actual malice.

Finally, we address whether Veritas has plausibly alleged that CNN, through Cabrera, published the at-issue statements with actual malice, meaning with knowledge of falsity or reckless disregard for the truth. *Sullivan*, 376 U.S. at 279–80. It is not difficult to conclude that it has.

Actual malice is a subjective test, requiring the plaintiff to show that the defendant "actually entertained serious doubts as to the veracity of the published account, or was highly aware that the account was probably false." *Michel v. NYP Holdings, Inc.*, 816 F.3d 686, 703 (11th Cir. 2016); *see also id.* at 702–03 ("The test is not an objective one and the beliefs or actions of a reasonable person are irrelevant."). Importantly, "[i]ll-will, improper motive or personal animosity plays no role in determining whether a defendant acted with actual malice." *Dunn v. Air Line Pilots Ass'n*, 193 F.3d 1185, 1198 n.17 (11th Cir. 1999) (quotations omitted); *see also Masson*, 501 U.S. at 510 ("Actual malice under the *New York Times* standard should not be confused with the concept of malice as an evil intent or a motive arising from spite or ill will.").

"In proving actual malice, a defamation plaintiff must shoulder a heavy burden." *Sindi v. El-Moslimany*, 896 F.3d 1, 14 (1st Cir. 2018); *see also Campbell v. Citizens for an Honest Gov't, Inc.*, 255 F.3d 560, 569 (8th Cir. 2001) (stating that the actual malice standard is "a daunting one" (quotations omitted)); *McDowell v. Paiewonsky*,

769 F.2d 942, 951 (3d Cir. 1985) (stating that actual malice requires a "high standard of proof"). But at the pleadings stage, Veritas need only allege sufficient facts to permit the inference that CNN published Cabrera's statements with actual malice. *Michel*, 816 F.3d at 702–03. Accordingly, to survive a motion to dismiss, Veritas had to plausibly allege in its amended complaint "facts sufficient to give rise to a reasonable inference that the false statement was made with knowledge that it was false or with reckless disregard of whether it was false or not." *Id.* at 702 (quotations omitted).

Veritas sufficiently pleaded in its complaint that CNN "actually entertained serious doubts as to the veracity" of Cabrera's on-air statements, or at least "was highly aware that [her statements were] probably false." *Id.* We need not look further than two of CNN's communications published four days prior to Cabrera's on-air statements—Cabrera's own tweet accurately reporting on Veritas's ban and the article written by Brian Fung on CNN's website. By relying on Cabrera's tweet and Fung's article in its complaint, Veritas "shoulder[ed its] heavy burden." *Sindi*, 896 F.3d at 14. It has plausibly alleged that CNN knew that the true reason for Veritas's suspension from Twitter was the posting of private information, but yet reported four days later on-air that Veritas had been suspended in relation to a crackdown on the spreading of misinformation. *See Lemelson v. Bloomberg, L.P.*, 903 F.3d 19, 25 (1st Cir. 2018) ("[A]ctual malice can be shown where the publisher is in possession of information that seriously undermines the truth of its story[.]").

CNN contends that the article and Cabrera's tweet about Veritas's suspension are not sufficient evidence of actual malice because they do not demonstrate that Cabrera "doubted her statement" that Veritas did, in fact, "fit into" the "broader crackdown" on misinformation by social media companies. In CNN's view, for Cabrera's tweet to be evidence of actual malice, she must have subjectively known that her tweet directly contradicted her on-air statements. But CNN's argument is unpersuasive. As we have explained, at the pleadings stage, Veritas must merely allege sufficient facts to permit the inference that Cabrera published her statements with knowledge or a reckless disregard for the truth. *Michel*, 816 F.3d at 702–03. And as we have detailed, Cabrera's February 15 statements affirmatively implied a false justification for Veritas's suspension from Twitter. Thus, Veritas has pleaded that CNN "was highly aware that the account was probably false." *Id.* Whether CNN, through Cabrera or others, entertained doubts of falsity or was actually aware that Cabrera's on-air statements were false is ultimately a question for a later stage.[22]

---

[22] Relatedly, Veritas also points to other allegations that it maintains support an inference of actual malice, including (1) its allegations that "Cabrera and CNN set out with a preconceived plan to malign and discredit Veritas by accusing it of publishing and promoting misinformation—and deliberately ignored compelling evidence that their accusation was false"; (2) its allegations related to CNN's "animus" and "ill will" towards Veritas; and (3) CNN's refusal to retract the statements. Because we find that Veritas has plausibly alleged actual malice on the basis of CNN's February 15 broadcast and

### IV.    Conclusion

We conclude that, at least at the motion-to-dismiss stage, Veritas plausibly alleged that the implications arising from Cabrera's statements are not substantially true and thus are actionable under New York defamation law.  We further hold that Veritas plausibly alleged that the statements were false and were published with actual malice.  Accordingly, the district court erred in granting CNN's motion to dismiss under Rule 12(b)(6).  We reverse the decision of the district court and remand for proceedings consistent with this decision.

**REVERSED AND REMANDED.**

---

Cabrera's earlier tweet, we need not address (and express no opinion on) the merits of these other allegations.

22-11270          ED CARNES, J., Concurring                    1

ED CARNES, Circuit Judge, Concurring:

If you stay on the bench long enough, you see a lot of things. Still, I never thought I'd see a major news organization downplaying the importance of telling the truth in its broadcasts. But that is what CNN has done in this case. Through its lawyers CNN has urged this Court to adopt the position that under the law it is no worse for a news organization to spread or promote misinformation than it is to truthfully disclose a person's address in a broadcast. *See* Maj. Op. at 23–27.

CNN makes that argument to support its position that Project Veritas cannot show actual malice because doing so requires showing reputational harm. *Id.* at 23–25. It asserts that the difference between the alleged truth involving Project Veritas' suspension from Twitter and what CNN allegedly falsely broadcast about that suspension did not have any effect on Project Veritas' reputation. *See id.* at 26–27. The Court's opinion assumes, for present purposes only, that actual malice does require reputational harm and holds that even if it does, reputational harm is sufficiently alleged in this case. *See id.* at 25, 27. I agree with that holding and all of the majority opinion, which I join in full.

I write separately to explain why falsely reporting that Project Veritas had been suspended from a broadcast platform for spreading or promoting misinformation satisfies any reputational harm requirement of actual malice. And that is still the case even if the reason Project Veritas had been suspended is for disclosing in a broadcast a person's house number or address.

In its district court brief in support of the motion to dismiss the defamation claim against it, CNN recounted Project Veritas' contention that there is "sufficient difference between getting kicked off [Twitter] for posting misinformation and getting kicked off for posting prohibited information to support a defamation claim by a public figure." Doc. 20-1 at 1–2. To which CNN curtly responded: "There is not." *Id.* at 2. But there is.

In that same brief, CNN quotes from a Supreme Court opinion the statement that the law of libel "overlooks minor inaccuracies and concentrates upon substantial truth." *Id.* at 13 (quoting *Masson v. New Yorker Mag., Inc.,* 501 U.S. 496, 516 (1991)). But, of course, the "minor inaccuracy" the Court was hypothesizing about in the *Masson* case was not a false statement, like the one here, that a news organization had been banned from a platform for using it to spread misinformation. CNN insists that the fact Project Veritas had been banned from Twitter for disclosing truthful private information (a house number or address) instead of for spreading misinformation in its broadcasts, is merely "an immaterial detail," or "at most, a foot fault." Doc. 20-1 at 20. But the truth is never an immaterial detail when accusing another of misconduct, and the boundary line between truth and falsehood that CNN allegedly stepped over is more important than any line in the game of tennis.

CNN's attorney was pressed at oral argument about his "immaterial detail" and mere "foot fault" assertions. Among the questions put to him was this one: "If [CNN itself] had to choose

between being branded as someone who revealed high profile people's house numbers or being branded as an organization that spread lies, which would it choose?" After unsuccessfully attempting to duck the question, he finally answered: "I will choose we don't want to be called sources of misinformation," but he added "the difference is modest." The difference is "modest" only for those who don't value the truth as a first principle of broadcasting. As I will show in a little while, CNN and those who speak for and through it outside of this litigation purport to value truth highly.

But CNN argues to us, in effect, that the public does not give a hoot about the difference between a broadcaster being banned for spreading or promoting misinformation on the one hand, and being banned for accurately disclosing a residence address on the other. It's all the same to the viewer, according to CNN the defendant, so we shouldn't be concerned about any difference. *See* DE 20-1 at 16 (brief in support of the motion to dismiss) ("To the average viewer, there is no material difference from a reputational standpoint between being banned for 'misinformation' and being banned for posting prohibited information (or threatening to share it)."). Not only that, CNN argues, but if anything, the truth that it did not reveal, is "much worse" than the falsehood CNN stated about Project Veritas. *Id.* at 18. CNN would have us believe that truthful disclosure of private information by a broadcaster (the reason Project Veritas was suspended from Twitter) is a greater journalistic sin than spreading or promoting misinformation (the reason CNN told the world Project Veritas was suspended). That

means CNN believes it actually did Project Veritas a favor by substituting a falsehood for the truth about why the organization was banned from Twitter. If that is so, then maybe CNN's three-and-a- half-year-long refusal to retract its false statement about why Project Veritas was suspended — it still hasn't issued a retraction — is a long-running favor of the same type, a gift of falsehood from CNN that has kept on giving to this day.

All of CNN's arguments recounted above are, of course, its position articulated and advanced for strategic purposes in this lawsuit. There is a wide gulf between the relatively low value CNN the defendant assigns to truth in its arguments in this lawsuit and the lofty value CNN assigns to truth in the public pronouncements of its leaders, its on-air-people, and others associated with the network. Some of their pronouncements show why falsely reporting that a journalistic organization has been banned from a platform for spreading misinformation seriously undermines the credibility and reputation of that organization. Here are examples of some of those outside-of-litigation statements about the overriding importance of truth:

*"We are truth-seekers* and story tellers." CNN Digital Mission.[1]

---

[1] *CNN Digital Mission*, CNN, https://www.cnn.com/about# (last visited Nov. 5, 2024) [https://perma.cc/HNJ4-KM52] (emphasis added).

22-11270          ED CARNES, J., Concurring          5

"*The world needs the truth now more than ever.  It needs honest reporting.*  It needs journalists it knows and trusts."  CNN Chairman and CEO Mark Thompson.[2]

"I think we can be a beacon in regaining that trust by being an organization that exemplifies *the best characteristics of journalism: fearlessly speaking truth to power . . . .  First and foremost, we should, and we will be advocates for the truth.*"  Former CNN CEO Chris Licht.[3]

"The principle is important . . . .  I think *as journalists it's incumbent upon us to stand up for truth*, really no matter how many millions of people do or do not believe us at any given time."  CNN Fact-Checker Daniel Dale.[4]

---

[2] Adam Piore, *Turnaround Time*, Columbia Journalism Review (Aug. 12, 2024), https://www.cjr.org/analysis/cnn-thompson-zaslav-turnaround-time.php (quoting Mark Thompson, Chairman and CEO of CNN Worldwide (Oct. 2023–present)) [https://perma.cc/QLA6-ZBHK] (emphasis added).

[3] Alexandra Steigrad, *New CNN Boss Chris Licht to Focus on "Truth" After Slew of Scandals*, New York Post (July 22, 2022, 7:19 AM), https://nypost.com/2022/05/02/new-cnn-boss-chris-licht-to-focus-on-truth/ (quoting Chris Licht, Chairman and CEO of CNN Worldwide (May 2022–June 2023)) [https://perma.cc/B6MX-QV6A] (emphasis added).

[4] *Daniel Dale: As Journalists We Must Stand Up for Truth*, CNN Business, https://www.cnn.com/videos/media/2020/08/30/daniel-dale-fact-check-intv-reliable-sources-vpx.cnn (last visited Nov. 5, 2024) [https://web.archive.org/web/20201017150423/https://www.cnn.com/videos/media/2020/08/30/daniel-dale-fact-check-intv-reliable-sources-vpx.cnn] (emphasis added).

6                    ED CARNES, J., Concurring                    22-11270

In addition to those statements exalting the significance of truth there are a number of others by its journalists and commentators on a video that CNN produced and posted to its website, which emphasize how essential it is for journalists to speak and promote the truth.[5]  Here are some of those statements:

"We need the facts.  *We are here to report the truth.*"  Brooke Baldwin.[6]

"*Why does the truth matter*?  I mean, that's almost like saying why is the sky blue and what is the meaning of life?  It *just does!*"  Michaela Pereira.[7]

"*Without it, what are we left with*?"  Kate Bolduan.[8]

---

[5]*See Dr. Gupta: "Everything Hinges on the Truth,"* CNN Health, https://www.cnn.com/videos/health/2017/06/08/champions-for-change-why-truth-matters-orig.cnn            (June            8,            2016) [https://web.archive.org/web/20210921041031/https:/www.cnn.com/videos/health/2017/06/08/champions-for-change-why-truth-matters-orig.cnn].

This link to a captured version of the web page on the Internet Archive works as of the date of this opinion.  (The link to this same video on CNN's website no longer appears to be operable.).

[6]*Dr. Gupta: "Everything Hinges on the Truth," supra* at n.5 (emphasis added).

[7]*Id.* (emphasis added).

[8]*Id.* (emphasis added).

22-11270                ED CARNES, J., Concurring                7

*"Everything hinges on the truth. You can't build anything, you can't be certain of anything, unless you start with the truth."* Dr. Sanjay Gupta.[9]

Mark Thompson, Chris Licht, Daniel Dale, Brooke Baldwin, Michaela Pereira, Kate Bolduan, and Dr. Sanjay Gupta are right. CNN, as represented by its lawyers in this case, is wrong. Truth is not an immaterial detail. Truth matters a great deal to a journalistic organization's credibility, reputation, and brand; it matters far more than not disclosing a person's address does.

Judge Branch's opinion for the Court contains a cogent paragraph explaining that credibility and integrity are essential to journalists and news organizations, and that without truthfulness they cannot operate effectively. *See* Maj. Op. at 26–27. Dedication to truth is not merely of modest importance to a news organization: it is central, fundamental, and indispensable. False claims that a news organization spread or promoted misinformation strike at the heart of its reputation and necessarily damage its effectiveness. If actual malice does include a requirement for reputational harm, CNN's on-air statements about Project Veritas meet that requirement.

---

[9] *Id.* (emphasis added).