[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

————————————

No. 24-11519

Non-Argument Calendar

————————————

TYRONE ANTHONY KEMP,

Plaintiff-Appellant,

*versus*

KEVIN POGORZELSKI,
in his individual capacity,

Defendant-Appellee.

————————————

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-05368-TWT

_____

Before ROSENBAUM, ABUDU, and ANDERSON, Circuit Judges.

PER CURIAM:

Tyrone Kemp appeals the dismissal of his lawsuit alleging that Officer Kevin Pogorzelski violated his federal constitutional rights and Georgia state law when Pogorzelski omitted facts and misrepresented others in the affidavit for the warrant for Kemp's arrest. The district court dismissed the complaint on qualified and official immunity grounds.

We write only for the parties who are already familiar with the facts. Accordingly, we set out only so much of the facts as is necessary to understand our opinion.

Kemp brought a claim under 42 U.S.C. § 1983 against Pogorzelski for malicious prosecution in violation of the Fourth Amendment. Kemp also brought a state law claim of malicious prosecution. In his complaint, Kemp pointed to several instances in the arrest warrant affidavit where he alleged that Pogorzelski either omitted exculpatory facts or misstated the facts he gleaned from witnesses. Following the arrest warrant, Kemp was arrested and spent four years in pre-trial incarceration until a jury found him not guilty. Recognizing that probable cause (or arguable probable cause in light of the qualified immunity defense) would defeat Kemp's claim, the district court accepted Kemp's alleged omissions and misrepresentations as true, and then added the missing facts and corrected the erroneous ones. In other words, the district

court reconstructed the affidavit in accordance with our established law, as discussed below.  The district court concluded that the corrected affidavit established arguable probable cause and granted Pogorzelski qualified immunity on the federal claim.  It then dismissed the state law claims on the basis of official immunity because Kemp's allegations did not support a reasonable inference of actual malice, which he needed to show to overcome the standard for official immunity.

## I. STANDARD OF REVIEW

We review a district court's dismissal for failure to state a claim *de novo*.  *Veritas v. Cable News Network, Inc.*, 121 F.4th 1267, 1274 (11th Cir. 2024). "We accept factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff." *Id*. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## II. INCORPORATION BY REFERENCE

Before we address the merits of Kemp's claims, we must address what we can consider.  Kemp asserts that the district court erred when it did not consider the transcript of eyewitness White when determining what was omitted or incorrect in the affidavit. Kemp argues that the district court should have incorporated by reference the transcript because it was referred to in the complaint and is unchallenged.  Kemp also argues that the district court erred when it used the College Park Police Department

Property Record to clarify what types of bullets were found at the crime scene.

"[T]he incorporation-by-reference doctrine only has two requirements: that the document be "(1) central to the plaintiff's claim; and (2) undisputed." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1298 (11th Cir. 2024). The transcript is indisputably central to Kemp's claims because two of the four errors he identified in the affidavit were confirmed by the transcript, the original source of the information. However, the district court was correct that it could use the Property Record because it, too, was central to Kemp's claim and was even cited in his complaint. So, we conclude that the district court did not err when it considered the Property Record. With respect to the transcript of Pogorzelski's interview with witness White, we conclude that the transcript qualifies to be incorporated by reference; however, we conclude below that consideration of same does not undermine the affidavit's establishment of arguable probable cause.

### III. QUALIFIED IMMUNITY

Qualified immunity protects government officials performing discretionary functions "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Officers have "the burden to establish that they were acting within their discretionary authority" when raising qualified immunity as a defense. *Ingram v. Kubik*, 30 F.4th 1241, 1250 (11th Cir. 2022). If the officers

satisfy that burden, then the burden shifts to the plaintiff to establish that (1) "the defendant violated a constitutional right," and (2) "the violation was clearly established." *Christmas v. Harris County*, 51 F.4th 1348, 1354 (11th Cir. 2022) (quotation marks omitted).

The Fourth Amendment protects citizens "against unreasonable searches and seizures." U.S. Const. amend. IV. "[A]n arrest is a 'seizure' of the person" under the Fourth Amendment. *Case v. Eslinger*, 555 F.3d 1317, 1326 n.10 (11th Cir. 2009). Whether a seizure is reasonable hinges on the presence of probable cause. *See id.* at 1326. In other words, the presence of probable cause for the arrest bars a plaintiff's claim for malicious prosecution. *Paez v. Mulvey*, 915 F.3d 1276, 1286 (11th Cir. 2019) (holding probable cause to arrest appellees on the charged "would defeat the Appellees' § 1983 malicious prosecution claims."). To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide 'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." *Maryland v. Pringle*, 540 U.S. 366, 371 (2003) (quoting *Ornelas v. United States*, 517 U.S. 690, 696 (1996)). Probable cause "is not a high bar," and "'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *Paez*, 915 F.3d at 1286 (quoting *D.C. v. Wesby*, 583 U.S. 48, 57 (2018)). It is a "flexible and fluid concept" that focuses on the "totality of the circumstances." *Id.* at 1286.

In deciding whether probable cause exists, arresting officers "are not required to sift through conflicting evidence." *Id.* (quoting

*Dahl v. Holley*, 312 F.3d 1228, 1234 (11th Cir. 2002)). Because law enforcement officers are not lawyers, "we do not expect them to resolve legal questions or to weigh the viability of most affirmative defenses." *Id*. at 1286 (citing *Williams v. City of Albany*, 936 F.2d 1256, 1260 (11th Cir. 1991)). "[T]he presence of some conflicting evidence or a possible defense will not vitiate a finding of probable cause." *Id*. at 1287.

We use a two-part test to determine whether a misstatement in an officer's warrant affidavit amounts to a violation of the Fourth Amendment. *Id*. "First, we ask whether there was an intentional or reckless misstatement or omission. Then, we examine the materiality of the information by inquiring whether probable cause would be negated if the offending statement was removed or the omitted information included." *Id*. In other words, in a case like *Paez* and this case, we assume that the facts alleged in the complaint are true and thus we assume that Pogorzelski recklessly disregarded the truth, and we focus on the other required prong of Kemp's proof—the materiality prong. We ask whether the affidavit for Kemp's arrest warrant still would have established probable cause if Pogorzelski had included the omitted facts and corrected the erroneous ones. *See id*. ("Our only question then is whether the affidavit still would have established probable cause . . . if [the officers] had included the omitted information that they knew about. If so, [the officers] did not violate the Fourth Amendment.").

24-11519                Opinion of the Court                7

Using this guidance from established law, the district court here corrected the misstatements Kemp identified in his complaint and added in the facts Kemp deemed crucial but missing from the affidavit. Those misstatements included that Kemp was wearing a white shirt, blue jeans, and white sneakers when in fact he was wearing long pants that probably were not blue jeans. The other misstatement was that the shooter ran in the direction of building 6 whereas witness White said that the shooter ran in the direction of buildings 12 and 14. The affidavit also omitted that Kemp collected bullets from the cars he detailed.[1]

On appeal, Kemp argues that the district court's reconstructed affidavit was incomplete because it did not include other errors that he identified in his response to Pogorzelski's motion to dismiss. Those errors included that Pogorzelski's affidavit reported that witness White identified the shooter as a black male whereas the actual transcript reveals that White did not explicitly identify the shooter's race. Kemp's response to the motion to dismiss also raised for the first time: the omission of the lack of forensic evidence tying Kemp to the crime; the omission of the fact that witness White knew the victim; the omission of witness Holland's statement that she saw Kemp shortly after the shooting and he seemed "cool and normal;" and the omission of theories being

---

[1] Kemp argues that the district court could not make the determination of arguable probable cause and that it was a matter reserved for a jury. However, in *Paez*, which Kemp cites, we approved the use of a motion to dismiss on qualified immunity grounds where omitted evidence was added to the challenged affidavit and we held that arguable probable cause existed.

floated by neighbors about what happened.  Kemp also asserts that the district court erred when it stated that one of the bullets found at the crime scene matched one of the shell casings found at the scene of the murder—i.e. he argues that the court should have construed the complaint in the light most favorable to the plaintiff and found that they did not match.[2]

We can assume arguendo—although not decide—that the additional omissions and errors raised in the response to the motion to dismiss should have been considered by the district court. We hold that the affidavit—when the omissions are added and when the mistakes are corrected—still establishes arguable probable cause.  All of the mistakes and omissions identified by Kemp—both those alleged in the complaint and those belatedly asserted in Kemp's response to Pogorzelski's motion to dismiss—do not undermine the more powerful evidence identified by Pogorzelski that implicated Kemp.  We find very persuasive the evidence of the timing of Kemp and the victim's interactions and Kemp's negative response upon learning that the victim was a transgender woman. Kemp was the last known person to be with the victim and he was upset to learn that she was transgender.  In the evening before the 4 a.m. murder, Kemp had arranged on an internet dating site for a date with the victim.  The victim told Kemp while driving to a bar

_____

[2] The district court did not err in this regard: the "Search Warrant Inventory List," central to Kemp's claim, states that one CBC .45 bullet was found in Kemp's apartment and the "Property Record" states that one CBC .45 bullet was found at the scene of the crime.

that she was transgender; Kemp was upset and told the victim to take him home to his apartment, which the victim did. While the victim was still in the apartment parking lot, Kemp made a Facetime call to the victim and the murder occurred just a few minutes after that phone call. Although Kemp had told Pogorzelski that, just before the murder, he had lost the cellphone which made that call, Kemp's friend, witness Holland, told officers that Kemp had not lost the cellphone, but rather had changed his cell phone's number after the murder. Also, video footage from the convenience store where Kemp told the officer he had lost his phone does not show him at the convenience store where and when he said he lost the phone. While the affidavit's description of the pants Kemp was wearing may not have been accurate, the rest of the affidavit's description of Kemp was accurate; he is about 5 feet six inches tall and was wearing a white shirt and white sneakers in the video.

After correcting the misstatements and adding the omitted facts, we readily conclude that there was arguable probable case. *See Paez*, 915 F.3d at 1286. Accordingly, we affirm the district court's judgment holding that Pogorzelski is entitled to qualified immunity and granting his motion to dismiss.[3]

_____

[3] We also affirm the district court's dismissal of Kemp's state law claim of malicious prosecution. Although Kemp labels a section of his brief "Malicious Prosecution," he discusses the federal law and only briefly addresses in his last paragraph the Georgia official immunity that was the basis of the dismissal of his state law claims. Georgia law requires a showing of actual malice to overcome official immunity, which the Georgia Supreme Court has defined as "a

## IV. AMENDED COMPLAINT

Kemp argues that the district court erred when it did not rule on his motion to amend his complaint and it should have allowed him to do so. We review the denial of a motion to amend a complaint for an abuse of discretion. *Fla. Evergreen Foliage v. E.I. DuPont De Nemours & Co.*, 470 F.3d 1036, 1040 (11th Cir. 2006). Here, the additional errors identified in the amended complaint were the same as those discussed above and thus do not have undermine the arguable probable cause. Thus, the district court did not abuse its discretion when it implicitly denied the motion.

AFFIRMED.

---

deliberate intention to do wrong." *Gates v. Khokhar*, 884 F.3d 1290, 1304 (11th Cir. 2018). Given that we have held that arguable probable cause existed and Kemp has not alleged any facts that would support a nefarious intent or malice on Pogorzelski's part, we reject Kemp's challenge to the district court's finding of official immunity with respect to Kemp's state law claim.